UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                  Case No. 2:11-mj-11
                                                  HON. TIMOTHY P. GREELEY

GARY JOHN MIKULICH,

    Defendant.
_____/

## OPINION

Gary John Mikulich was charged in a criminal complaint filed in the United States District Court for the Eastern District of Michigan with attempting to destroy a government building by means of an explosive while creating a substantial risk of injury to a person, in violation of 18 U.S.C. § 844(f)(1) and (2). In March of 2011, defendant was arrested in the Upper Peninsula of Michigan within the United States District Court for the Western District of Michigan and was brought before the undersigned for a Fed. R. Crim. P. Rule 5(c)(B) initial appearance on March 25, 2011. The undersigned received a report from pretrial services and attempted to hold an initial appearance, but defendant's competence to proceed became a concern.[1] Accordingly, an order was issued requiring defendant to undergo a psychological and psychiatric evaluation to determine competence to proceed at trial. *See* Order for Psychological or Psychiatric Evaluation, Docket #3. Thereafter, on April 21, 2011, a grand jury in the Eastern District of Michigan returned a three count indictment charging the defendant with attempting to destroy a government building by means of

---

[1] During the course of these proceedings, defendant has indicated he was once President of the United States, Co-Governor of California, a Secret Service Agent, and a Deputy United States Marshal.

an explosive while creating a substantial risk of injury to a person, in violation of 18 U.S.C. § 844(f)(1) and (2), using and carrying a destructive device during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) and (B)(ii), and possession of an unregistered destructive device, in violation of 26 U.S.C. § 5861(d). On August 10, 2011, a competency hearing was held. At that hearing, the forensics report received from the Metropolitan Correctional Center in Chicago, Illinois, was relied upon and this Court concluded that defendant was not competent to proceed. *See* Sealed Psychological Evaluation, Docket #10. Defendant was ordered committed for further evaluation and treatment for restoration of competency. See 18 U.S.C. § 4241(d).

On February 19, 2012, Sara Revell, Complex Warden, Federal Correctional Complex, Butner, North Carolina, sent the Court a letter, with an attached report, indicating that defendant's evaluators have opined that defendant currently remained not competent to proceed. In addition, the Court was provided with a report which addressed the need to involuntarily treat defendant with psychotropic medications in order to restore his competence. Defendant's evaluators were "requesting judicial oversight as required by the *Sell* decision. Should the Court rule that Mr. Mikulich may be treated with psychotropic medications, we further recommend a full four month period for restoration as outlined in Title 18, U.S.C. Section 4241(d)." *See* Sealed Psychological Evaluation, Docket #10. Another hearing was held before the undersigned on February 28, 2012, during which the government requested that, pursuant to *Sell v. United States*, 539 U.S. 166 (2003), the Court order the involuntary medication of defendant to allow for his restoration to competence. The parties have fully briefed the matter and it is now ready for a decision.

In the brief filed on behalf of defendant[2] in this matter, it was stated:

> As the Court and counsel are all well aware, the water-shed case on this issue is *Sell v. United States*, 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003). Summarizing the several factors the Supreme Court identified for consideration when evaluating a request to use involuntarily medication to bring a defendant to competence for trial purposes, the *Syllabus* said:
>
>> "Under the framework of *Washington v. Harper,* 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178, and *Riggins v. Nevada,* 504 U.S. 127, 112 S.Ct. 1810, 118 L.Ed.2d 479, the Constitution permits the Government involuntarily to administer antipsychotic drugs to render a mentally ill defendant competent to stand trial on serious criminal charges if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the trial's fairness, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." *Sell v. United States, supra.*, p 166.
>
> As the government's *Memorandum of Law* correctly points out, Dr. Herbel's February 28th testimony is unrebutted; and the Defendant does not intend to present any further evidence in opposition to the facts and opinions expressed by the doctor. And because Dr. Herbel specifically limited his *Forensic Evaluation* and subsequent testimony to what is commonly known as the second, third, and fourth *Sell* factors, it is the intent of this memorandum to primarily focus on the first prong of the required *Sell* evaluation – is the use of involuntary medication significantly necessary to further important governmental trial-related interests?

Defendant's Response to Government's Memorandum of Law, Docket #19.

---

[2] The law recognizes that defendant has a liberty interest in not being involuntarily medicated. There is, however, no way to know whether or not defendant wishes to exercise that liberty interest. Defendant has been found not competent and is not in a position to make decisions, including whether or not he wishes to exercise that liberty interest. Most individuals suffering from a serious medical condition with the possibility of treatment, such as that presented to the defendant in this case, would accept the risk and take the medication. According to the law, the Court and defense counsel must accept that if defendant was competent, he would wish not to be medicated.

The undersigned finds that the testimony of Dr. Herbel at the February 28, 2012, hearing addresses the second, third and fourth *Sell* factors and, furthermore, establishes that the second, third and fourth factors have been met. The second factor addresses whether the involuntary medication of defendant would significantly further the state's interests, requiring the Court to find that the administration of the drugs is substantially likely to render the defendant competent to stand trial. The Court must also consider whether the administration of drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel. The third factor requires the Court to consider whether involuntary medication is necessary to further those interests and that less intrusive treatments are unlikely to achieve substantially the same result. The fourth factor requires the Court to address whether or not the administration of the drugs is medically appropriate, i.e., in the patient's best interest in light of defendant's medical condition. The report of Dr. Herbel establishes that the second, third and fourth factors support the government's request for involuntary medication. That report has gone unrebutted and defendant's counsel, in his filings with this Court, has not disputed Dr. Herbel's findings. Most importantly, there is nothing in the record to support a contrary finding. Accordingly, the Court finds that the second, third and fourth factors of *Sell* have been met and that the issue presented turns on the first factor.

The first factor requires the Court to determine whether an important governmental interest is at stake and supports the involuntary medication of the defendant. In the brief filed on behalf of defendant, it is explained:

> The first question a court evaluating this "first prong" of *Sell* must ask is whether the governmental interest at stake is important. *Sell v. United States, supra.*, p 180. Certainly, when a defendant is accused

of a serious crime, a serious crime against the person or against property, the government's interest is equally serious – the government is seeking to protect and provide security. *Id.* Likewise, when less serious offenses are at issue, the government's interest is similarly lessened. Citing *Green* and attempting to distinguish *Stephenson*, the government argues that these charges, because they are alleged to involve the attempted bombing of a public building and jointly carry a mandatory minimum sentence of thirty-seven years, are very "very serious" offenses. The Defendant finds it hard to disagree with this argument, except to point out that *Sell*, itself, was a very serious case – a practicing dentist who claimed that communists had contaminated the gold he was using for fillings was charged with the attempted murder of an FBI agent. *Id.*, pp 169-170. And Mr. Mikulich has no criminal record.

Defendant's Response to Government's Memorandum of Law, Docket #19.

The Supreme Court explained in *Sell*:

First, a court must find that *important* governmental interests are at stake. The Government's interest in bringing to trial an individual accused of a serious crime is important. That is so whether the offense is a serious crime against the person or a serious crime against property. In both instances the Government seeks to protect through application of the criminal law the basic human need for security. *See Riggins, supra*, at 135-136, 112 S.Ct. 1810 ("'[P]ower to bring an accused to trial is fundamental to a scheme of "ordered liberty" and prerequisite to social justice and peace'" (*quoting Illinois v. Allen*, 397 U.S. 337, 347, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (Brennan, J., concurring))).

Courts, however, must consider the facts of the individual case in evaluating the Government's interest in prosecution. Special circumstances may lessen the importance of that interest. The defendant's failure to take drugs voluntarily, for example, may mean lengthy confinement in an institution for the mentally ill—and that would diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime. We do not mean to suggest that civil commitment is a substitute for a criminal trial. The Government has a substantial interest in timely prosecution. And it may be difficult or impossible to try a defendant who regains competence after years of commitment during which memories may fade and evidence may be lost. The potential for future confinement

> affects, but does not totally undermine, the strength of the need for prosecution. The same is true of the possibility that the defendant has already been confined for a significant amount of time (for which he would receive credit toward any sentence ultimately imposed, see 18 U.S.C. § 3585(b)). Moreover, the Government has a concomitant, constitutionally essential interest in assuring that the defendant's trial is a fair one.

539 U.S. at 180.

As the Court in *Sell* made clear, this Court is required to consider the facts of the individual case in evaluating the government's interest in prosecution. Accordingly, it is necessary to outline some of the facts which have resulted in the criminal charges filed against defendant.

The affidavit filed in support of the criminal complaint indicates that on or about February 26, 2011, a black Husky tool bag was found outside the McNamara Federal Building in Detroit, Michigan. It was unknown how long the bag had been there and an employee reported the abandoned bag to Federal Protective Services. Thereafter, an officer of Federal Protective Services seized the bag, brought it inside the building, where it sat for some three weeks until someone decided to x-ray the bag. The x-ray revealed wires, electronic components, and a dense mass. Suspecting a bomb, the Detroit Police Department Bomb Squad took possession of the tool bag and took it to Bell Isle, where it conducted a "render safe procedure using a PAN (Percussion Actuated Non-Electric Disrupter). When the bomb squad utilized the PAN, there was a secondary explosion. This secondary explosion was apparently the result of explosive material which had been placed in the tool bag with some form of timing device.

In April of 2011, a grand jury in the Eastern District of Michigan returned a three count indictment against the defendant. Count 1 of that indictment charges defendant with attempting to destroy a government building by means of an explosive while creating a substantial

risk of injury to a person, in violation of 18 U.S.C. § 844(f)(1) and (2). This offense carries a minimum sentence of seven years in prison and a maximum sentence of forty years. Count 2 charges defendant with using and carrying a destructive device during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) and (B)(ii). This offense carries a minimum term of imprisonment of thirty years and maximum sentence of up to life imprisonment. *See United States v. Stewart*, 628 F.3d 246, 258-59 (6th Cir. 2010). Count 3 charges defendant with possession of an unregistered destructive device, in violation of 26 U.S.C. § 5861(d). This offense carries a maximum penalty of ten years in prison. In determining whether or not there is an important governmental interest at stake, the seriousness of the offense is one factor which must be considered. Placing a bomb outside a federal building is a serious offense. The penalties provided, particularly those related to the offenses charged in Counts 1 and 2, support a conclusion that this is a serious offense and the government has an important interest in prosecuting this action. In *United States v. Green*, 532 F.3d 538 (6th Cir. 2008), the Sixth Circuit explained that in considering the *Sell* factors, "the maximum statutory penalty is the most objective means of determining the seriousness of a crime in the standard we adopt." *Id*. at 549. Defendant places great reliance on the case of *United States v. Stephenson*, 2011 WL 3738967 (W.D. Mich. 2011), a case where Magistrate Judge Brenneman found that the *Sell* factors had not been met and Stephenson could not be involuntarily medicated. In *Stephenson*, the defendant was charged with unlawful possession of ammunition by a convicted felon, an offense which carried a maximum penalty of ten years. There is, in the opinion of the undersigned, a significant difference between the offense charged in *Stephenson* and the offense charged in the instant case. In *Stephenson*, Magistrate Judge Brenneman found that defendant's continued refusal to take medications voluntarily was a special circumstance because

it would certainly lead to a lengthy term of confinement within an institution for the mentally ill, even if defendant was not involuntarily medicated. *See* 18 U.S.C. §§ 4241, 4246 and 4248. Defendant argues that he is looking at a lengthy term of confinement and this reduces the risk the government faces by him being released. Defendant also argues that the government's interest in prosecuting this action is not important because defendant will plead insanity and no conviction will result. A viable insanity plea is entirely speculative.

More importantly, the decision in *Sell* and the decision by Magistrate Judge Brenneman in *Stephenson* never address the possibility that the defendant is innocent. If defendant is rendered competent and can assist counsel, and through that assistance can establish his innocence, that certainly would be of great benefit to the defendant. Moreover, the government, the public, and those of us who work in federal buildings, have an extremely important interest in seeing that individuals who place bombs outside federal buildings are prosecuted and confined. Thus, the government has an important governmental interest, not in just convicting the defendant, but also in clearing him so that it can look for the actual perpetrators. In addition, should defendant be rendered competent, he may decide to cooperate and could provide the government with important information, including whether or not he had an accomplice.

Examining the unique circumstances of this case, the Court concludes that the government has an extremely important interest in prosecuting this matter. Accordingly, an order will issue permitting the involuntary medication of defendant Mikulich, pursuant to restrictions on this treatment. The treatment will be initially limited to four months, medical staff will be required to request that defendant take the medication orally before injections and explain potential side effects, defendant's health will be closely monitored with the understanding that treatment should

stop in the event he suffers from major side effects or other problems, reports of side effects shall be made to the Court as soon as possible, and the Court shall receive detailed reports at six-week intervals, including progress towards competency.

        /s/ Timothy P. Greeley
        TIMOTHY P. GREELEY
        UNITED STATES MAGISTRATE JUDGE

Dated:   April 18, 2012